**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF TEXAS**

**LUFKIN DIVISION**

S.P., AN INDIVIDUAL, Case No.

Plaintiff,

vs.

G6 HOSPITALITY PROPERTY LLC,

Defendant.

**COMPLAINT FOR DAMAGES;**

**DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff S.P. by and through the undersigned counsel and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1. This action for damages is brought by S.P. ("Plaintiff"), a survivor of sex trafficking, under the Federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 18 U.S.C. § 1595.

2. G6 HOSPITALITY PROPERTY LLC ("Defendant") was the hotel owner and hotel operator of the subject hotel premises, operating as Motel 6, located at 5101 West Century Blvd, Inglewood, CA 90304 ("Century Hotel"), during the relevant time period that Defendant owned

said property, and as such was responsible for the subject hotel during the time period Plaintiff was sex trafficked on said premises.

3. Defendant was the owner and operator of the Century Hotel located at 5101 West Century Blvd, Inglewood, CA 90304 during the relevant time periods.

4. Plaintiff was trafficked at 5101 West Century Blvd, Inglewood, CA 90304 from 2016 through and inclusive of 2017.

5. During the relevant time period, Defendant was owner and operator of the subject premises.

6. Plaintiff was born in 1976.

7. Plaintiff meets the definition of a sex trafficking victim under the TVPRA. She was trafficked at the Century Hotel as an adult from 2016 through and inclusive of 2017, during which time she was induced through force, fraud, and coercion, including threats with a weapon and physical assault, by her trafficker to have sex with sex buyers on Defendant's subject premises.

8. As a hotel owner and hotel operator of the subject property, Defendant controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

9. The passage of the TVPA in 2000 and the passage of the TVPRA in 2008 as well as numerous other legislative initiatives, put the Defendant on notice of the high likelihood of these illegal acts occurring on the subject hotel premises which, at a minimum, warranted them to be all the more vigilant and proactive in preventing this conduct.

10. Years before Plaintiff was trafficked, Defendant knew or should have known of the critical role that the hotel industry plays in enabling the sex trade industry and of the widespread national epidemic of hotel/motel sex trafficking. By 2012, training guides and videos were available

through the American Hotel Lodging Association (AHLA) and ECPAT-USA and via other resources.

11. Section 1591 of the TVPRA criminalizes sex trafficking of adults by force, fraud or coercion. See 18 U.S.C. § 1591. Separately, §1595 of the TVPRA provides individuals who are victims of sex trafficking with a civil remedy against the traffickers or the beneficiaries of the sex trafficking crime. See 18 U.S.C. §1595(a). More specifically, §1595 provides for three distinct causes of action: (1) a claim against the trafficker who directly violated §1591(a)(1) – a criminal statute; (2) a beneficiary claim against the trafficker who directly violated §1591(a)(2) – a criminal statute; and (3) a beneficiary claim against a civil defendant who did not violate §1591, but who "knowingly benefit[ed], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a); the subject lawsuit is applicable to prong three, i.e. a beneficiary claim against a civil defendant.

## PARTIES

12. Due to the sensitive, private, and potentially retaliatory nature of the allegations herein, Plaintiff's name and address is not contained in this Complaint to protect the safety, privacy and identity of this subject sex trafficked victim. Nationwide similarly situated Plaintiffs have proceeded by pseudonym or by their initials due to the foregoing.

13. Plaintiff is currently a resident of Nevada.

14. At all times relevant and material, Defendant owned and operated a hotel doing business as Motel 6 at 5101 West Century Blvd, Inglewood, CA 90304, and was authorized to do, licensed to do, and was doing business in the aforesaid State offering the subject hotel as a place of public lodging.

15. The principal place of business of Defendant is 4100 International Pkwy, Carrollton, TX 75007.

## JURISDICTION AND VENUE

16. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States, namely 18 U.S.C. § 1595.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Count asserted in this action occurred in the judicial district where this action was brought, and/or Defendant conducts business within this District pursuant to 28 U.S.C. § 1391(b).

18. The principal place of business of Defendant G6 HOSPITALITY PROPERTY LLC is located at 4100 International Pkwy, Carrollton, TX 75007 within the Eastern District of Texas. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

19. As the hotel owner and hotel operator during the relevant time period for the subject property, Defendant G6 HOSPITALITY PROPERTY LLC, (headquartered at 4100 International Pkwy, Carrollton, TX 75007, within the Eastern District of Texas), controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies, protocol, rules and guidelines for its subject property where Plaintiff was sex trafficked.

## CAUSE OF ACTION

## VIOLATION OF 18 U.S.C. § 1595 (“TVPRA”)

20. Plaintiff sets forth an action for violation of 18 U.S.C § 1595 as against Defendant.

21. At all relevant times, Defendant, as owner and operator of the subject hotel, was involved in the staffing and operation of Defendant's subject hotel where Plaintiff was trafficked for sex as an adult during the relevant aforesaid time periods.

22. Plaintiff was trafficked by her trafficker, a male individual, who operated a commercial sex trafficking and drug dealing enterprise at the subject hotel premises.

23. A room was rented by the trafficker or at the direction of the trafficker at the Century Hotel and used for the sex trafficking of the Plaintiff.

24. Discovery will inform whether the trafficker, (or individuals at the trafficker's direction), booked the room at the subject hotel that was used for the sex trafficking of the Plaintiff in violation of the TVPRA:

a. Under the registrant's proper legal name or a false name;

b. Whether cash, prepaid card, debit card or credit card was used at the time of respective booking or renewal; and

c. Whether staff of Defendant required for each booking that the renter show their identification.

25. Defendant knowingly benefited from the sex trafficking of Plaintiff at Defendant's hotel by receiving payment for the room rented by her trafficker (or at the direction of her trafficker) that was used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA during the aforesaid relevant time periods.

26. Defendant rented a room at the subject hotel to individuals it knew or should have known were engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

27. Plaintiff's trafficker used proceeds derived from the sex trafficking occurring on the subject premises to continue to pay for the room rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA.

28. In addition, Defendant received other financial benefit including, but not limited to, from Wi-Fi which, in part, enabled the subject sex trafficking to occur, as Plaintiff was advertised by her trafficker online through websites including Backpage, Craigslist, and CityXGuide, and from such Wi-Fi service Defendant, upon information and belief, received financial benefit.

29. During the relevant time period alleged herein, Defendant took part in a common undertaking or enterprise involving risk and potential profit with Plaintiff's trafficker that violated the TVPRA as to the Plaintiff herein.

30. Operating hotels and renting out rooms is an enterprise involving risk and potential profit.

31. Defendant operating the subject hotel and renting out a room to Plaintiff's trafficker was an enterprise involving risk and potential profit which violated the TVPRA as to the Plaintiff herein.

32. Defendant G6 HOSPITALITY PROPERTY LLC's association with the Plaintiff's sex trafficker was a venture because Plaintiff's trafficker had prior commercial dealings with said Defendant at the subject hotel premises by means of a room repeatedly rented by the trafficker (or at the direction of the trafficker) during the time period of Plaintiff's trafficking, which Defendant knew, or should have known, were being used for the sex trafficking of Plaintiff in violation of the TVPRA, and which the parties wished to continue for profit.

33. Defendant's repeated rental of a room to Plaintiff's trafficker (or an individual renting at the direction of the trafficker) at the subject hotel was not a standard arm's length transaction, but rather the repeated room rental transactions which occurred during the time that Plaintiff was

trafficked at the subject hotel were colored by overt indicators of sex trafficking such that Defendant knew, or should have known, that Defendant was renting a room to individuals engaged in sex trafficking, and of Plaintiff in particular, in violation of the TVPRA.

34. A continuous business relationship existed between Defendant's hotel, its agents, employees and staff, and Plaintiff's trafficker's sex trafficking business, in part, in that Defendant provided assistance, support, or facilitation to the Plaintiff's trafficker at the subject hotel by repeatedly renting a room to individuals they knew or should have known were involved in sex trafficking on the premises in violation of the TVPRA, including as to the Plaintiff herein; and in doing so facilitated the venture's success.

35. Defendant knowingly benefited from this venture, or enterprise, involving risk and potential profit, which was in violation of the TVPRA as to the Plaintiff herein, by receiving payment for the room rented by Plaintiff's trafficker (or at the direction of her trafficker) at the subject hotel that was used for sex trafficking, including as to the Plaintiff, during the aforesaid relevant time periods.

36. Defendant participated in a venture by operating the subject hotel and renting a room to individuals that said Defendant knew or should have known were involved in sex trafficking, including as to the Plaintiff herein, in violation of the TVPRA.

37. Defendant participated in a venture that said Defendant knew or should have known was trafficking Plaintiff at Defendant's hotel in violation of the TVPRA.

38. This Defendant knew or should have known that the undertaking or venture violated the TVPRA as to the Plaintiff.

39. Defendant knew or should have known about the nature of the sex trafficking occurring at Defendant's subject hotel, including as to the Plaintiff, a victim, due to the many red flags then and there existing, including but not limited to:

a. Constant foot traffic of sex buyers to the trafficker's rented room to have sex with Plaintiff at the subject hotel;

b. Plaintiff was visible to Defendant's staff at the subject hotel on hotel grounds and during direct interactions, appearing visibly impaired by controlled substances including methamphetamine, sleep deprived, malnourished, wearing sexually explicit and revealing clothing including short skimpy dresses, and bearing visible bruising consistent with physical abuse;

c. Plaintiff was trafficked alongside at least two other women at the subject hotel in a manner consistent with organized commercial sex trafficking, known by their working names Summer and Passion, while Plaintiff herself operated under the working names Cashmere and Desire;

d. Inside the hotel room rented by the trafficker (or at the direction of the trafficker) at the subject hotel there were suspicious people and suspicious items including controlled substances (methamphetamine, marijuana, and ecstasy), drug paraphernalia, condoms, sex toys, pills, and cash, which were observed by housekeeping staff or should have been so observed;

e. Plaintiff's room at the subject hotel exhibited signs of commercial sex work;

f. Plaintiff was forced to solicit on the premises of the subject hotel;

g. Plaintiff's trafficker advertised Plaintiff for commercial sex acts online through websites including Backpage, Craigslist, Ashley Madison, and CityXGuide using Wi-Fi available at the subject hotel;

h. Plaintiff's trafficker threatened Plaintiff with a weapon on the subject premises, using said weapon as a means of coercion and control;

i. Plaintiff's trafficker physically assaulted and punched Plaintiff on the subject premises;

j. Plaintiff's trafficker actively sold and distributed controlled substances including methamphetamine, marijuana, and ecstasy on the subject premises, in a manner that was known or observable to Defendant's staff;

k. Plaintiff developed a friendly and recognizable relationship with Defendant's staff, regularly conversing with them outside the lobby and in common areas of the hotel over the course of her trafficking, such that staff were well aware of her ongoing and prolonged presence at the subject premises and the circumstances under which she was present;

l. Other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

40. Defendant's staff at the subject hotel witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking including items set forth in paragraph 39 above.

41. When being trafficked at the Century Hotel from 2016 through and inclusive of 2017, Plaintiff interacted with Defendant's staff on a frequent basis, and Defendant's staff witnessed and observed Plaintiff, her trafficker, as well as a frequent procession of sex buyers going in and out

of the subject rented room, contemporaneous with other signs and indicators of trafficking occurring on the subject premises.

42. Plaintiff knows that some of the individuals that witnessed and observed red flags indicative for suspicion for sex trafficking were staff members in that the staff were readily identifiable to Plaintiff either by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area.

43. Defendant's involvement and failure, by its agents, servants, staff, and employees, to timely and properly prevent the sex trafficking or timely intervene regarding same was a proximate and competent cause and substantial factor in causing Plaintiff's severe injuries in this case including, but not limited to, being the victim of sex trafficking when at the subject hotel and suffering personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day, while being trafficked, and while simultaneously being under fear of severe harm or death if she did not comply, including as a result of being threatened with a weapon and physically assaulted.

44. This Defendant, during the relevant time period, could deny accommodation and/or eject a guest for a number of reasons including, but not limited to, (1) guest visibly under the influence of drugs or alcohol, (2) guest creating a nuisance to the public; (3) guest believed to use a hotel room for unlawful purposes, (4) guest uses hotel amenities and premises for unlawful acts, (5) guest brings in extra unregistered guests, (6) guest's behavior reasonably disturbs other guests (7) guest violates other rules set by the hotel and (8) for other indicated reasons.

45. Plaintiff being sex trafficked at Defendant's subject hotel was a proximate cause, competent cause and substantial factor in causing her severe and permanent injuries including but

not limited to personal injuries including the horror of being a victim of sex trafficking as well as significant levels of psychological trauma due to the levels of abuse she was caused to endure during the time she was trafficked. This trauma led to depression, anxiety disorders, and PTSD, which in turn affects daily functioning.

46. As a direct and proximate result of Defendant's involvement and multiple failures to act, mandate, establish, execute anti-trafficking measures and modify their anti-trafficking efforts at the hotel property, Plaintiff was sex trafficked, sexually exploited, and victimized repeatedly at Defendant's subject hotel in violation of the TVPRA.

47. As a consequence of being sex trafficked at the subject hotel, Plaintiff suffered and will continue to suffer substantial economic, physical, mental, emotional, psychiatric, psychological injuries as the result of being trafficked and sexually exploited at the subject hotel in violation of 18 U.S.C. §1591.

## TOLLING OF LIMITATIONS

48. Plaintiff was under the control, coercion, and manipulation of her trafficker through at least 2017, and as a result, Plaintiff lacked the information and capacity to understand her injuries and their legal causes.

49. Thus, Plaintiff did not discover and could not reasonably have discovered the legal cause of her injury—through no fault of her own—lacked the information and understanding to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of Plaintiff being kept under the control, coercion, and manipulation of her trafficker, which Defendant facilitated.

50. At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being "trafficked" at

Defendant's hotel or that she was a person "trafficked," much less that she was the "victim" of a legal venture involving Defendant, and she did not discover and was not in a position to discover the legal cause of her injury for years after her trafficking ended.

51. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Plaintiff faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Plaintiff filed this lawsuit.

52. While under the control of her trafficker through at least 2017, Plaintiff did not have the freedom to investigate her claims, to identify those responsible, or to seek legal representation necessary to pursue her legal rights. Plaintiff could not have pursued her claims while under the active control of her trafficker despite the exercise of ordinary diligence.

53. To the extent Defendant asserts an affirmative defense of limitations, Plaintiff invokes the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendant.

54. Plaintiff was subject to continuous trafficking at the subject hotel through at least 2017, which is not more than 10 years before Plaintiff brings this lawsuit.

55. This continuous trafficking resulted from Defendant's facilitation of trafficking at the subject hotel as described above.

56. The TVPRA's ten-year limitations period, 18 U.S.C. § 1595(c), is subject to equitable tolling. See, Arellano v. McDonough, 598 U.S. 1, 6–7 (2023), in which the court emphasized the "hornbook law" presumption that federal statutes of limitations are subject to tolling unless

Congress clearly states otherwise. See also, Doe v. G6 Hospitality Franchising LLC et al, No. 3:2025-cv-00770 - Document 53 (N.D. Tex. 2025).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as identified in the above-referenced Count and as follows:

a. All available compensatory damages for the described losses with respect to the above cause of action;

b. Past and future emotional distress;

c. Consequential and/or special damages;

d. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

e. Physical pain and suffering

f. Disgorgement of profits obtained through unjust enrichment;

g. Restitution;

h. All damages allowable under the TVPRA;

i. Reasonable and recoverable attorney's fees;

j. Punitive damages with respect to each cause of action;

k. Costs of this action; and

l. Pre-judgement and all other interest recoverable

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: March 13, 2026

RESPECTFULLY SUBMITTED,

/s/ Jason Byrd
Jason Byrd
THE BYRD LAW FIRM
448 Orleans
Beaumont, TX 77701
Telephone: (409) 924-0660
Facsimile: (409) 924-0035
jason@txbyrd.com

/s/ Randolph Janis
Randolph Janis, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
rjanis@douglasandlondon.com

/s/ Chloe Makowsky
Chloe Makowsky, Esq.
DOUGLAS AND LONDON, P.C.
One State Street, 35th Floor
New York, NY 10004
Telephone: (212) 566-7500
Facsimile: (212) 566-7501
cmakowsky@douglasandlondon.com

Attorneys for Plaintiff